Stephen Hendricks, OSB #79265
shendricks@hendrickslawfirm.com
Hendricks Law Firm
1425 SW 20th Ave, Suite 201
Portland, OR 97201
503 241-5629

Heather A Brann OSB #040495
branns@earthlink.net
Heather A. Brann PC
PO Box 11588
Portland OR 97211
503 490-6563

Of attorneys for
Plaintiff Peggy S. Foraker

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PEGGY FORAKER, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>USAA CASUALTY INSURANCE COMPANY, a Texas Corporation,<br><br>        Defendant. | Civil Case No.:   3:14-cv-00087-BR<br><br>**PLAINTIFF PEGGY FORAKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CAUSATION AS TO INJURIES FOR WHICH USAA ACCEPTED COVERAGE AND PAID UNDER THE POLICY OF INSURANCE**<br><br>**Alternative Motion to Exclude Evidence Contrary to USAA's Conduct Admitting Coverage Under the Policy**<br><br>[Fed. R. Civ. P. 56] |

## LR7-1 CERTIFICATION

Undersigned counsel certifies that counsel have met and conferred by telephone on the subject of this motion, and that the parties have been unable to agree.

## TIME REQUESTED FOR HEARING

**PLAINTIFF PEGGY FORAKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff asks that the Court allow 30 minutes for the hearing of this motion at the pretrial conference. Plaintiff will file her reply, if any, on shortened time to permit hearing of the motion on March 24, 2015.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Peggy S. Foraker ("Foraker") hereby moves for partial summary judgment against Defendant USAA Casualty Insurance Company ("USAA") (1) that the medical bills paid under PIP and MedPay coverage in the sum of $159,328.76 conclusively establish that Ms. Foraker incurred reasonable, necessary and related medical care in the gross amount of $338,511.80 pursuant to *White v Jubitz*, 347 Or. 212, 243, 219 P.3d 566, 583 (2009), (2) that the underlying injuries for those medical bills which were paid are established as "bodily injuries sustained by a covered person in an auto accident," and (3) Adrian Niera was 100% at fault for the accident.

## UNDISPUTED FACTS

Ms. Foraker was injured in a two-car automobile collision on January 4, 2012, when Adrian Neira, fleeing police and driving the wrong way down a one-way street, negligently crashed his automobile into Plaintiff's automobile, a Volkswagen Passat. Mr. Neira was uninsured. On January 4, 2012, Plaintiff and her Volkswagen Passat were insured by a valid contract of insurance with USAA that provided coverage for Personal Injury Protection of $15,000, Additional Personal Injury Protection of $50,000, (collectively, "PIP") Medical Payments ("MedPay") of $100,000 and for Uninsured Motorist ("UM") benefits of $1,000,000.

The applicable policy provisions provided:

> We will pay Oregon PIP benefits for:
>
> 1. Medical and hospital expenses,
>
> \*\*\*
>
> incurred with respect to bodily injury sustained by a covered person and caused by an accident arising from the use, occupancy, or maintenance of any motor vehicle.

*Brann Dec.*, Ex. A at 22

> **PART B - MEDICAL PAYMENTS COVERAGE**
>
> We will pay only the reasonable fee for medically necessary and appropriate medical services . . . These fees and expenses must:
>
> a. Result from bodily injury sustained by a covered person in an auto accident; and
> b. Be incurred for services rendered within one year of the date of the auto accident.
>
> We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are reasonable fees for medically necessary and appropriate services . . .

*Brann Dec.,* Ex. A. at 23.

> **PART C - UNINSURED MOTORIST COVERAGE**
>
> We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured vehicle because of:
>
> 1. Bodily injury sustained by a covered person and caused by an auto accident;

*Brann Dec.,* Ex. A at 24.

The Policy provides the following definition related to all coverage parts:

> Bodily Injury (referred to as BI) means bodily harm, sickness, disease or death.

*Brann Dec.* Ex. A at 32.

**PLAINTIFF PEGGY FORAKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff complied with all terms and conditions of the policy, including submitting a claim of loss for PIP benefits, MedPay benefits, and UM benefits. USAA accepted coverage under the PIP and MedPay portion of the policy, and as set forth in USAA's own summary, paid $159,329.76 in covered medical expenses under the PIP and MedPay portions of the policy. *Brann Decl.,* Ex. B at 2, 4.

USAA, acting through its adjusters, actually considered whether to pay claims that were presented. For example, Ms. Foraker had brain surgery at UCLA, generating a bill in excess of $223,000.00. USAA initially rejected the bill, and then:

> IN REVIEW OF THE FILE, ALL MEDICAL PROVIDERS INDICATE THAT THE BRAIN SURGERY IS RELATED TO THIS LOSS. PRIOR DOC HAS LISTED ALL OF HER COMPLAINTS. IN NON[E] OF HER MEDICAL RECORDS DOES SHE INDICATE ANY SIGNIFICANT MEDICAL HISTORY RELATING TO THIS TYPE OF INJURY
>
> . . . . WE SETUP A NEURO IME . . . AND DR REFUSED TO SEE HER. WE DID NOT SEND A ROR AT THIS TIME OR COMMUNICATE THE NEED FOR AN IME . . . THE PHAD REVIEWER SEEMS TO INDICATE THAT THE HYDROCEPHALUS IS POSSIBLY DUE TO THE INSURED'S AGE . . . BUT IN THIS CASE SHE ALSO DID SUSTAIN A TRAUMA TO THE HEAD WHEN THE LEFT DOOR AIRBAG DEPLOYED STRIKING HER HEAD AND APPARENTLY THIS HYDROCEPHALUS CONDITION CAN ALSO OCCUR FROM TRAUMA. . . .I BELIEVE THE BEST COURSE OF ACTION IS TO EXHAUST THE COVERAGE UNDER MP.

*Brann Dec.,* Ex. D at 4.

USAA considered and rejected submitted bills as not reasonable, necessary or related. *See, e.g.,* Ex. B at 1, 3 (1/15/12 entry for Providence, 1/18/12 entry for Sportscare Physical Therapy). Ultimately USAA paid slightly more than the $150,000 limits of Ms. Foraker's PIP and MedPay

coverages.[1]

From the USAA list of payments, and going back to the original bills, attached is a summary which correlates each payment with either a CPT or ICD-9 code; thereby identifying the specific injury or condition for which payment was made. *Brann Decl.*, Ex. C. By far and away, the largest payment was to UCLA for brain surgery to treat hydrocephalus, (approximately $82,000 out of $160,000), the second largest group of payments were for a cervical neck fusion (approximately $40,000) and the third largest group of payments was for physical therapy (over $13,000)

Despite having nearly exhausted the expanded PIP and MedPay portions of its policy, under the UM portion of the policy, USAA has denied that plaintiff has received any injury, at all, in the two-car collision of January 4, 2012. This includes denying that all of her injuries in the bills for which it previously accepted, processed and paid $159,328.76. *Brann Decl.,* Ex. B.

Adjusters deposed to date have testified that all of the expenses paid were determined to be reasonable, necessary, and related to the covered auto accident. *Brann Dec.* ¶¶ 6-9. This happened in a three step process. First, providers submitted bills with a claim form to Auto Injury Solutions ("AIS"), at USAA's request. After AIS determined that bills were reasonable, necessary, and related, the adjuster would see a flag that the bill was approved. The adjuster would then submit a payment request. The adjuster's supervisor, a Claims Service Manager, would approve payment.

---

[1] USAA determined that--despite the designation and separate premium paid for Additional PIP--the $50,000 of APIP replaced, rather than supplemented the $15,000 of standard PIP. Plaintiff disputes this interpretation of the policy under Oregon law, but that issue is not relevant to the instant motion.

**PLAINTIFF PEGGY FORAKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

If any of these three did not approve the payment, a check would not be issued. *Id.* Plaintiff will supplement the record with deposition transcripts as soon as they are available. *Brann Dec.,* ¶ 9.

Also as part of the investigation, USAA made inquiries of Portland Police, including review of 911 tapes. *Brann Dec.* Ex. D at 2-3. USAA ultimately determined that Mr. Niera was 100% at fault, and Ms. Foraker 0% at fault. *Id.* at 1, 5-6. USAA abandoned any subrogation claim against the Portland Police, because the 911 tape revealed that, while Mr. Niera saw the Police and fled the scene at high speed, the Police did not begin pursuit until *after* Niera hit Ms. Foraker. *Id.* Ex. D. at 3, 7. Thus in administering the policy, USAA has taken the position that Niera is 100% at fault, Ms. Foraker is 0% at fault, and the Portland Police are 0% at fault.

## LEGAL ARGUMENT

### 1. SUMMARY OF THE ARGUMENT

USAA only pays PIP, or Med Pay, when it has a contractual and statutory obligation because (1) its "covered person" has sustained (2) a "bodily injury" (3) caused by an auto accident. USAA has both a statutory and contractual right to investigate, and to deny claims that do not meet these three requirements. The legal standard for paying medical bills under PIP is the same as under MedPay, and is the same as under tort law. Hence, the fact that USAA paid bills under PIP and MedPay is conclusive as to whether those bills were reasonable, necessary and related to the auto accident. Under *White v Jubitz*, therefore, the amount of damages is

the full amount incurred by the injured party, not the amount paid by PIP. *White v. Jubitz,* 347 Or. 212, 243, 219 P.3d 566, 583 (2009).

It also necessarily follows that the injuries for which bills were paid are also "bodily injuries" from the subject accident. The specific injuries are identified for each bill which USAA paid on the spreadsheet. *Brann Dec.,* Ex. C.

USAA accepted coverage for the bodily injuries that are part of this Motion for Partial Summary Judgment. Therefore, the acceptance of coverage and fact of payment establishes, under the contract, for those payments which were made, that the underlying injuries for which the bills were paid were covered "bodily injuries" sustained by Peggy Foraker and caused by the January 4, 2012 auto accident. Moreover, in conducting its investigation, USAA determined that Mr. Niera was 100% at fault, Ms. Foraker was 0% at fault, and the Portland Police were 0% at fault. Where USAA has unequivocally admitted this by its conduct, it should be deemed to have waived any right to challenge causation as to the admitted covered injuries, and as to fault of any actor besides Mr. Niera.

2. **LEGAL AUTHORITY**

Peggy Foraker requested that her auto insurer, USAA pay under both PIP and Med Pay for significant medical bills associated with significant injuries arising from the 1/4/12 auto accident. If the bills were from a "bodily injury" caused by an "auto accident", USAA had a duty to pay them, both statutorily, ORS 742.524(1)(a), and per the Part B of the contract, set forth above. USAA had the right to deny those bills which it did not believe were

caused by the accident. Under PIP, the right is statutory, ORS 742.520(6), and in the policy. *See eg Grisby v. Progressive Preferred Ins. Co.*, 142 P.3d 531, 533, 207 Or. App. 592 (Or. App., 2006). For Med Pay, USAA explicitly retained the right and duty to investigate and only pay for those medical bills which were caused by an auto accident.

> "We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are reasonable fees for medically necessary and appropriate services . . ."

*Brann Dec.,* Ex. B at 23. For $159,328.76 worth of medical bills, USAA first investigated, and then paid. By doing so, USAA concluded that per its statutory duty and its insurance contract with Peggy Foraker, those medical bills were for "bodily injuries" "sustained in an auto accident."

USAA's conduct, by evaluating, deciding that the medical bills for the injuries listed were caused by the January 4, 2012 accident, binds USAA to its conclusion for the same issue, with the same party, under the same policy of insurance. Plaintiff seeks a partial summary judgment on grounds of waiver. USAA cannot talk out of both sides of its mouth, by admitting causation in its investigation of facts arising under the policy, and then denying causation simply because the expenses are mounting.

Waiver is the voluntary relinquishment of a known right. *Alderman v. Davidson,* 326 Or. 508, 513, 954 P.2d 779 (1998). A party to a written contract may waive a provision of that contract by conduct or by oral representation. *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or. 235, 241, 855 P.2d 626 (1993). "Unlike a modification to a contract, waiver can be accomplished unilaterally, and it need not be supported by consideration."

*Bennett v. Farmers Ins. Co. of Or.,* 332 Or. 138, 26 P.3d 785, 796 (2001). Waiver and estoppel cannot be applied to expand the scope of coverage of a policy of insurance. *ABCD Vision, Inc. v. Firemans' Fund Ins. Co.*, 304 Or. 301,307, 744 P.2d 998 (1987). However, Insurers are subject to Oregon law on waiver and estoppel as any other party to a contract would be when there "is no policy concern about expanding coverage." *Moore v. Mutual of Enumclaw Ins. Co.,* 116 Or. App. 206, 840 P.2d 1320 (1993) (remanding for determination of whether insurer waived time limitation under contract) *rev'd*, 317 Or. 235, 241, 855 P.2d 626 (statute superseded Oregon common law by requiring written waivers for fire insurance policies). *See also Anderson v. Farmers Ins. Co. of Or.,* 188 Or. App. 179, 71 P.3d 144,149 (2003) (holding refusal to pay for covered expense waived requirement that surgery occur within time frame of policy, "Farmer's willingness to pay for half the cost of the surgery is an indication that it considered the surgery to be a covered expense"), *Boyer Metal Fab, Inc. v. Maryland Cas. Co.*, 90 Or. App. 103, 750 P.2d 1195 (1988) (estoppel cannot expand coverage, but an insurer can be estopped from asserting conditions of forfeiture).  Here, waiver does not operate to change any policy term. Instead, like any other party to a contract, USAA's actions in performance of the contract waive its right to take a contrary view of the facts.

When an insurer concedes that certain losses are covered, waiver can apply to bar litigation on the scope of covered losses.  *Adams v. Northwest Farm Bureau Ins. Co.,* 40 Or. App. 159, 594 P.2d 1256, 1260 (1979) (insurer conceded that separate buildings under policy were covered

**PLAINTIFF PEGGY FORAKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

losses, and so partial denial of liability waived requirement to submit further proofs of loss). "Waiver may also be found in a concession by the insurer that a certain amount is due on account of the loss of given items." *Adams*, 594 P.2d at 1260 (citing *Watson v. Pacific Co.*, 144 Or. 413, 21 P.2d 201, (1933)). "[C]onduct of an insurer after a loss had occurred that is inconsistent with a particular defense, particularly where the insured has been * * * led to believe there is coverage, will constitute a waiver of the defense." *Wright v. State Farm Mut. Auto Ins. Co.*, 196 P.3d 1000, 223 Or. App. 357, 369 (2008) (quoting Richard A. Lord, 14 *Williston on Contracts* §41.26 (4th ed. 2000) (remanding for determination of whether insurer's letter accepting coverage waived two-year limitation of ORS 742.504(12)(a)).

"'Coverage' . . . is the universe of *people, vehicles,* and *events* that trigger the insurer's obligation to pay under the policy." *Grisby v. Progressive Preferred Ins. Co.,* 207 Or. App. 592, 142 P.3d 533 (2006) (quoting *Bergmann v. Hutton,* 337 Or. 596, 604, 101 P.3d 353 (2004)). By paying PIP and Med Pay benefits for the injuries listed here and suffered by Ms. Foraker, USAA has demonstrated by its conduct that such injuries were covered "bodily injuries" under its policy of insurance. While it may remain free to dispute whether subsequent treatments were reasonable and necessary under the circumstances, USAA has waived any right to contest that these "bodily injuries" were in fact caused by the covered accident. *Grisby,* 207 Or. App. 592, 142 P.3d at 533-34.

Here, USAA exercised its contractual right to investigate and adjust the claim, and it accepted coverage of Ms. Foraker's listed injuries as being

"bodily injuries" of a "covered person" and "caused by an accident" covered by the policy of insurance. The UM adjusters shared the claims file with the PIP and Med Pay adjusters, and so there was no internal treatment by USAA of the claims as different.  It appears that USAA's decision to talk out of both sides of its mouth is simply out of an economic desire to pay less than its contractual obligations, to the detriment of its insured.

Moreover, the Oregon statutes governing automobile insurance policies assume that PIP, Med Pay, and UM will apply to the same injuries when the cause of a collision was a negligent, uninsured driver. ORS 742.542, "Effect of personal injury protection benefits paid," provides:

> Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damages that the insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident but may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits.

ORS 742.542.  Given statutorily mandated coverages, the legislature recognized that the payment of the medical bills under PIP would bind in the UM context, since both coverages necessarily cover "bodily injury" to an insured "caused by an accident" covered by the policy. Given that both coverages apply where an uninsured motorist is involved, the statute allows PIP benefits to be a reduction for damages, but not to reduce the total policy limits.

With respect to causation of the accident, USAA exercised its rights to investigate and pursue subrogation. It determined that Niera was 100% at fault, Ms. Foraker was 0% at fault, and the Portland Police had no

**PLAINTIFF PEGGY FORAKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

responsibility because they did not begin pursuit of Niera until after he collided with Ms. Foraker.  Again, USAA should not be able to relitigate these issues after it unequivocally waived these factual arguments by its conduct in adjusting the claim.

In short, USAA paid the limits of liability under both PIP and Med Pay, and in doing so accepted coverage for Ms. Foraker's listed bodily injuries under the attached policy of insurance.  As a result, USAA has waived the right to contest causation of these bodily injuries for the same accident under the same policy of insurance.

### 3. ALTERNATIVE MOTION TO EXCLUDE EVIDENCE THAT COVERED EXPENSES WERE NOT CAUSED BY ACCIDENT, OR WERE NOT REASONABLE OR NECESSARY MEDICAL EXPENSES

In the event that the Court declines to enter an order of partial summary judgment on the reasonable and necessary medical expenses for treatments where USAA acknowledged coverage for injury caused by the auto accident, Plaintiff moves, in the alternative, to exclude evidence contrary to USAA's documented coverage position.  USAA took a carefully documented, formal position in the performance of its contractual duties with Ms. Foraker as its insured.  USAA has not raised as an affirmative defense that there was any mistake in its interpretation of the facts that gave rise to over $150,000 in coverage under the PIP and MedPay portions of the policy.  Similarly, USAA formally determined that Mr. Niera was 100% at fault, that Ms. Foraker was 0% at fault, and that the Portland

Police had no responsibility, because any chase began after the collision with Ms. Foraker. Without an affirmative defense to explain why it should not be bound by its conduct in adjusting the claim, USAA has not preserved any legal argument as to why it has not waived its contractual rights by its conduct. Presentation of argument that these injuries were not caused by the auto accident and were not reasonably and necessary expenses, in the face of its conduct admitting coverage under the contract of insurance would be prejudicial, confusing, and a waste of time.  Fed. R. Evid. 403.

## 4. CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court enter partial summary judgment in her favor, on the grounds that the bodily injuries she sustained for which USAA accepted coverage and paid her claim are admittedly caused by an accident and covered under the policy of insurance.  Plaintiff requests that the Court enter an Order finding that Plaintiff has incurred reasonable and necessary medical expenses as a result of the 1/4/12 accident in the sum of $338,511.80.  Plaintiff requests that the court enter an Order that the injuries set forth in Exhibit C are "bodily injuries sustained by a covered person in an auto accident".  A partial summary judgment will streamline trial, and allow the parties to focus on the issues for which there is a genuine dispute.  In the alternative, the Court should exclude evidence contrary to USAA's accepted coverage, on the grounds of confusion and waste of time.

Dated:  February 23, 2015.

Stephen Hendricks, OSB #79265
shendricks@hendrickslawfirm.com
Hendricks Law Firm
1425 SW 20th Ave, Suite 201
Portland, OR 97201
503 241-5629


By     /s/Heather A. Brann
   **Heather A. Brann OSB #040495**
Heather A. Brann, PC
branns@earthlink.net
Heather A. Brann PC
PO Box 11588
Portland OR  97211
503 490-6563



Attorneys for Plaintiff Peggy S. Foraker

**PLAINTIFF PEGGY FORAKER'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT**