IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PEGGY FORAKER,                                    3:14-cv-00087-BR

            Plaintiff,                       AMENDED OPINION
                                                 AND ORDER
v.

USAA CASUALTY INSURANCE COMPANY,
a Texas corporation,

            Defendant.


**HEATHER A. BRANN**
P.O. Box 11588
Portland, OR 97211
(503) 490-6563

**JAMES R. JENNINGS**
1550 N.W. Eastman Parkway, Suite 275
Gresham, OR 97030
(503) 669-3406

**STEPHEN C. HENDRICKS**
Hendricks Law Firm, PC
1425 S.W. 20th Avenue, Suite 201
Portland, OR 97201
(503) 241-5629

            Attorneys for Plaintiff


1 - AMENDED OPINION AND ORDER

**JOSHUA N. KASTAN**
**ROBERT S. MCLAY**
Hayes Scott Bonino Ellingson & McLay, LLP
203 Redwood Shores Parkway, Suite 480
Redwood City, CA 94065
(650) 637-9100

**MATTHEW C. CASEY**
Bullivant Houser Bailey, PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204
(503) 499-4478

                    Attorneys for Defendant


**BROWN, Judge.**

     This matter comes before the Court on Plaintiff Peggy
Foraker's Motion (#103) for Partial Summary Judgment and
Plaintiff's Motion (#132) to Strike Inadmissible Documents Filed
by USAA in Opposition to Plaintiff's Motion for Summary Judgment.
The Court heard oral argument on these Motions on May 13, 2015.

     For the reasons that follow, the Court **DENIES** Plaintiff's
Motion for Summary Judgment and **DENIES as moot** Plaintiff's Motion
to Strike.


                         <u>BACKGROUND</u>

     The following facts are undisputed and taken from the
parties' submissions on summary judgment:

**I.   Factual Background**

     Plaintiff was injured in a two-car automobile collision on

2 - AMENDED OPINION AND ORDER

January 4, 2012, when Plaintiff's car collided with the car of
Adrian Neira.  At the time of the collision Neira was fleeing
police and driving the wrong way down a one-way street.

Defendant insured Plaintiff and her automobile under an
insurance policy that provided $50,000 in "Additional Personal
Injury Protection" (PIP), $100,000 on Medical Payments (MedPay),
and $1,000,000 in Uninsured Motorist (UM) benefits.  Neira was
uninsured.

Plaintiff's PIP coverage provided Defendant would pay for
"medical and hospital expenses . . . incurred with respect to
bodily injury sustained by a covered person and caused by an
accident arising from the use, occupancy, or maintenance of any
motor vehicle."  Plaintiff's MedPay coverage provided Defendant
would pay the "reasonable fee for medically necessary and
appropriate medical services" that "[r]esult from bodily injury
sustained by a covered person in an auto accident."  Plaintiff's
UM coverage provided Defendant would pay "compensatory damages
which a covered person is legally entitled to recover from the
owner or operator of an uninsured motor vehicle because of . . .
[b]odily injury sustained by a covered person, and caused by an
auto accident."

On January 5, 2012, Plaintiff reported the accident to
Defendant and made PIP and MedPay claims.  Plaintiff later made a
UM claim.  Defendant accepted coverage under PIP and MedPay and

3 - AMENDED OPINION AND ORDER

between February 6, 2012, and February 20, 2013, Defendant paid
$159,329.76 to Plaintiff for covered medical expenses under the
PIP and MedPay portions of the policy.  On February 20, 2013,
Defendant advised Plaintiff and her medical providers that
Defendant's payments exhausted the limits of Plaintiff's MedPay
and PIP coverages.

For each payment that Defendant made under PIP and MedPay,
Defendant provided an Explanation of Reimbursement (EOR).  The
EOR explains any reduction of the payment or any refusal ro
provide coverage.

The largest portion of Plaintiff's medical bills related to
brain surgery that Plaintiff underwent at the University of
California Los Angeles (UCLA) Medical Center to treat
hydrocephalus.  Initially Defendant issued EORs in which
Defendant rejected the bills from UCLA on the basis that
Plaintiff's hydrocephalus was not related to the accident.  After
reconsideration, however, Defendant chose to pay a portion of the
bills for the brain surgery at UCLA under Plaintiff's PIP and
MedPay coverage.  Defendant initially considered the opinion of a
reviewing physician who suggested Plaintiff's hydrocephalus could
be caused by Plaintiff's age rather than by the accident, but
Defendant ultimately concluded "all medical providers indicate
that the brain surgery is related to" the accident.  Defendant's
insurance adjuster specifically noted:  "[I]n non[e] of her

4 - AMENDED OPINION AND ORDER

medical records does [Plaintiff] indicate any significant medical history relating to this type of injury." Accordingly, Defendant concluded Plaintiff's hydrocephalus and the brain surgery to treat that condition were due to the accident. In addition, Defendant concluded Neira was 100% at fault for the accident.

Defendant accordingly paid over $31,000.00 in medical expenses related to the brain surgery at UCLA. This payment exhausted the policy sub-limits for PIP and MedPay.

In total Plaintiff incurred:

1. $233,458.20 in medical expenses related to diagnosis and treatment of hydrocephalus (including the UCLA brain surgery), of which Defendant paid $81,676.03;

2. $61,111.00 in medical expenses for diagnosis and surgical treatment of a cervical-disc injury, of which Defendant paid $46,235.76;

3. $13,053.34 in medical expenses related to diagnosis and treatment of an additional neck and back injury, of which Defendant paid $8,873.86;

4. $14,141.00 in medical expenses related to diagnosis and treatment of a shoulder injury, of which Defendant paid $6,466.63;

5. $12,547.90 in medical expenses related to diagnosis and treatment of bilateral hand injuries, of which Defendant paid $8,556.33;

6.   $10,773.36 in medical expenses for office visits, medical imaging, and additional miscellaneous injuries, of which Defendant paid $4,172.83;

7.   $3,269.00 in medical expenses for diagnosis and treatment of traumatic brain injury, of which Defendant paid $2,486.69; and

8.   $1,569.00 in medical expenses for diagnosis and treatment of an inner-ear concussive injury, of which Defendant paid $859.63.

As noted, Defendant made each of the above payments under the PIP and MedPay coverages.  After the PIP and MedPay policy sub-limits were exhausted, Plaintiff began pursuing a UM claim for outstanding medical expenses and additional economic and noneconomic damages.  Defendant has not made any payment under Plaintiff's UM coverage.  At the time that Defendant made the payments for Plaintiff's PIP and MedPay claims, Defendant did not issue any reservation of rights that expressly reserved to Defendant the right to make a contrary determination under a UM claim.

## II.  Procedural Background

Plaintiff brings three claims against Defendant:  Plaintiff alleges Defendant breached the insurance contract by refusing to make payments under the UM coverage (Claim One); Plaintiff alleges Defendant's refusal to pay UM benefits violated the

Elderly Persons and Person with Disabilities Abuse Prevention Act, *Oregon Revised Statues* § 124.005, *et seq*. (Claim Two); and Plaintiff alleges Defendant's actions in denying benefits under the UM coverage breached Defendant's contractual implied covenant of good faith and fair dealing (Claim Three).

On April 23, 2014, the Court dismissed without prejudice Claim Two as premature and with leave to amend if and when the amount of any money that Defendant may owe to Plaintiff is actually determined.  On August 28, 2014, the Court bifurcated the proceedings to allow the parties to litigate Plaintiff's UM claim (Claim One) to conclusion before litigating Claim Three.


## PLAINTIFF'S MOTION (#103) FOR SUMMARY JUDGMENT

### I.    Standards

Summary judgment is appropriate when there is not a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id*.  "This burden is not a light one

7 – AMENDED OPINION AND ORDER

. . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  *See also Moore v. Potter*, 701 F. Supp. 2d 1171 (D. Or. 2010).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive

evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.

## II.  Discussion

In her Motion for Partial Summary Judgment Plaintiff seeks summary judgment as to (1) the causal connection between the accident and the medical conditions for which Defendant has paid for some treatment, (2) the reasonableness and necessity of the medical expenses incurred by Plaintiff, and (3) the comparative fault in the accident.

In particular, Plaintiff contends (1) she is entitled to summary judgment as to the reasonableness and necessity of all medical expenses she incurred because, as a matter of law, the proper measure of damages is the gross amount of her medical bills; (2) Defendant, by determining causation in Plaintiff's favor during review of Plaintiff's PIP and MedPay claims, waived its right to take inconsistent positions on that issue with regard to Plaintiff's UM claim; and (3) there is not any genuine dispute of material fact as to whether Neira was 100% at fault

for the accident.

**A.    Reasonableness and Necessity - Measure of Damages**

As noted, Plaintiff contends she is entitled to summary judgment as to the reasonableness and necessity of the medical expenses she incurred because the measure of damages is, as a matter of law, the full amount of her medical expenses. To support her position Plaintiff relies exclusively on *White v. Jubitz Corp.*, 347 Or. 212, 242 (2009), in which the Oregon Supreme Court held:

> [T]he plaintiff in a personal injury action is entitled to claim and recover from a tortfeasor the reasonable value of the medical services charged without limitation to the sums for which plaintiff is legally liable, that plaintiff has paid for those services, or that a third party has paid on plaintiff's behalf.

*White*, however, is distinguishable from this case. The issue in *White* was whether the measure of damages was reduced by the actions of a third party that operated to reduce the amount that the plaintiff *actually* paid rather than, as here, whether the full amount of medical expenses was *per se* reasonable. In *White* the Oregon Supreme Court held the third party's reduction in the amount of medical expenses that the plaintiff actually paid did not reduce the full measure of damages and that the plaintiff was instead entitled to the "reasonable value of the medical services charged" regardless of the effect of the third party's actions. *Id.* at 231-43.

10- AMENDED OPINION AND ORDER

Moreover, *White* does not support Plaintiff's particular argument.  Rather than providing that the full measure of Plaintiff's medical expenses are *per se* reasonable and necessary as a matter of law, *White* actually begs the question that Plaintiff contends it answers.  As the Oregon Supreme Court made clear, a plaintiff in a personal-injury action is entitled to "the *reasonable* value of the medical services charged."  *Id.* at 242 (emphasis added).  Thus, even under *White* a personal-injury plaintiff must still establish that the value of the services rendered was reasonable.  Here the Court cannot conclusively determine on this record whether the full extent of the medical expenses incurred by Plaintiff but not paid by Defendant were "reasonable and necessary" and that Defendant, therefore, had a duty to pay them (assuming the other elements of coverage are satisfied).

Accordingly, on this record the Court concludes Plaintiff is not entitled to summary judgment as to the reasonableness and necessity of the claimed medical expenses that were not paid by Defendant.

**B.    Causation - Contractual Waiver**

As noted, Plaintiff contends Defendant waived the right to now assert Plaintiff's injuries were not caused by the accident when Defendant, by paying the PIP and MedPay claims, determined Plaintiff's injuries were, in fact, caused by the accident.

11- AMENDED OPINION AND ORDER

"Waiver is the voluntary relinquishment of a known right."
*Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 156 (2001).
"A party to a written contract may waive a provision of that
contract by conduct or by oral representation." *Id.*

"The doctrine of waiver applies broadly to any contract
term." *Wright v. State Farm Mut. Auto. Ins. Co.*, 223 Or. App.
357, 368 (2008). "In the context of an insurance contract
specifically, '[c]onduct of an insurer after a loss has occurred
that is inconsistent with a particular defense, especially where
the insured has been . . . led to believe there is coverage, will
constitute a waiver of the defense.'" *Id.* at 369 (quoting
*Williston on Contracts* § 41:26 (4th ed. 2000)).

"However, waiver 'cannot be the basis for creating a
contract of coverage where no such contract previously existed.'"
*Farmers Ins. Co. of Oregon v. Munson*, 127 Or. App. 413, 418
(1994)(quoting *Schaffer v. Mill Owners Ins. Co.*, 242 Or. 150, 156
(1965)). Accordingly, "[w]aiver may be available to prevent an
insurer from asserting a policy defense if the defense is a
condition of forfeiture, but not if it is a condition of
coverage."[1] *Id.* at 418. *See also Wright*, 223 Or. App. at 369
(noting although the universe of insurance limitations is not

---

[1] Although Plaintiff frames her argument in terms of waiver,
the Court notes this rule is the same in the context of the
related doctrine of estoppel. *See Richardson v. Guardian Life
Ins. Co. of America*, 161 Or. App. 615, 624-25 (1999).

exclusively bifurcated between conditions of coverage and
conditions of forfeiture, a condition of coverage is,
nonetheless, not waiveable).

"A condition of forfeiture is one 'where there is insurance
coverage for the loss in the first place,' but acts of the
insured, such as the filing of a false statement of loss, nullify
the coverage." *Munson*, 127 Or. App. at 418 (quoting *ABCD . . .*
*Vision, Inc. v. Fireman's Fund Ins. Cos.*, 304 Or. 301, 307
(1987)). If, on the other hand, a condition determines "whether
there is coverage in the first place," it is a condition of
coverage and, therefore, cannot be waived. *Id.*

The causation provision is a condition of coverage. By its
terms the policy only covers those medical expenses that are
incurred to diagnose and to treat injuries that are caused by the
loss. Accordingly, the causation provision that Plaintiff
contends Defendant waived by resolving that issue, in effect, in
Plaintiff's favor with regard to Plaintiff's PIP and MedPay
claims determines whether there is coverage for the injury under
the terms of the policy in the first place. Thus, the Court
concludes the causation provision is a condition of coverage that
Defendant could not waive.[2] *See Munson*, 127 Or. App. at 418.

---

[2] The Court notes, however, that evidence regarding
Defendant's causation determination in the context of Plaintiff's
PIP and MedPay claims may be admissible as to whether the
accident caused the now-disputed injuries in the context of
Plaintiff's UM claim.

Relying on *Wright* and *Grisby v. Progressive Preferred Insurance Co.*, 343 Or. 175 (2007), Plaintiff contended at oral argument that the causation condition in her UM coverage is not a condition of coverage.  Plaintiff's reliance on *Wright* and *Grisby* to support her position, however, is misplaced.

In *Wright* the Oregon Supreme Court noted the insured's UM coverage had a two-year limitation period that required the insured to file suit against the insurer within two years of the loss if there was a dispute as to coverage.  The Oregon Supreme Court held this provision was not a condition of coverage, but rather was a "suit limitation provision" that could be waived. *Wright*, 223 Or. App. at 368-71.  Unlike the suit-limitation provision in *Wright*, however, the causation condition at issue here is a necessary element that determines the existence of coverage in the first instance.  In other words, in *Wright* the suit-limitation provision operated to provide a window in which the insured must take action in order to collect benefits on her coverage, but under Plaintiff's UM coverage in this case if the injury was not caused by the covered accident, then coverage for that injury does not and never did exist.  Accordingly, the Court's conclusion that the causation condition is a condition of coverage is not inconsistent with *Wright*.

In *Grisby* an insurer concluded the insured's injury was caused by the accident, but, nonetheless, the insurer determined

14- AMENDED OPINION AND ORDER

the chiropractic treatment that the insured received was not related to the accident.  The issue before the Oregon Supeme Court was whether the insurer had "accepted coverage" within the meaning of the attorneys' fees safe-harbor provision in Oregon Revised Statute § 742.061(2)(a).  The court held the insurer had not "accepted coverage" because

> whether an insurer has 'accepted coverage' . . . is not limited to a one-time decision by the insurer that a particular accident is within the scope of a policy that it had issued (and that the insurer now has obligations under that policy), but rather is an ongoing series of decisions 'accepting' or 'denying' coverage of particular claims for services rendered by medical providers.

*Grisby*, 343 Or. at 181.  Thus, the *Grisby* court did not address the question presented here (*i.e.*, whether a causation condition is a condition of coverage), and, therefore, the *Grisby* court's reasoning does not resolve the question raised by Plaintiff's Motion.  Although the *Grisby* court adopted a broad view as to whether an insurer "accepted coverage," the court's interpretation of that phrase does not shed light on which conditions make up the necessary elements of that coverage.  Accordingly, *Grisby* is not inconsistent with this Court's conclusion that the causation condition in Plaintiff's UM coverage is a condition of coverage.

On this record, therefore, the Court concludes the causation condition in Plaintiff's UM provision is a condition of coverage, and, therefore, Defendant did not waive the causation condition

15- AMENDED OPINION AND ORDER

with respect to Plaintiff's UM claim by paying Plaintiff's PIP

and MedPay claims.[3]

### C.   Fault - Genuine Dispute of Material Fact

Finally, Plaintiff contends she is entitled to summary

judgment as to the issue of fault for the accident because it is

materially undisputed that Neira was 100% at fault for the

accident.  Defendant, in turn, contends a genuine dispute of

material fact exists as to fault for the accident based on two

facts in the record:  (1) Plaintiff acknowledged she

"unsuccessfully attempted to accelerate out of the way of the

rapidly approaching assailant but could not avoid the collision"

and (2) the fact that Neira was fleeing the Portland police at

the time of the accident creates a genuine dispute of material

fact as to the comparative fault of the Portland police (an

insured party whose shoes Defendant would not be required to fill

as to the UM coverage).

It is undisputed that the accident occurred when Plaintiff's

vehicle was struck by Neira while Neira was going the wrong way

down a one-way street.  Defendant concluded in its investigation

---

[3] Plaintiff's waiver argument notwithstanding, the Court
notes there is a genuine dispute of material fact as to whether
the injuries for which Plaintiff incurred the medical expenses
were, in fact, caused by the accident.  Moreover, as noted at
oral argument, the fact that Defendant may have "admitted" the
causal connection by paying for certain services it now wishes to
contest may be admissible at trial as an admission and go to the
weight of the evidence generally on the disputed causation
questions.

of the accident that Neira was 100% at fault for the accident. In addition, Defendant decided not to pursue a subrogation claim against the Portland police because Defendant concluded they did not begin to pursue Neira until *after* the collision.

On this record the Court concludes Plaintiff has carried her burden to demonstrate the absence of any genuine dispute of material fact regarding fault for the accident. The only facts that Defendant points to as creating a genuine dispute do not negate the clear evidence regarding fault. In addition, the mere fact that Plaintiff attempted unsuccessfully to avoid the collision, without more, does not establish Plaintiff did so negligently. Moreover, the fact that Neira was fleeing police at the time of the accident does not create a genuine dispute of material fact as to the potential fault of the Portland police because it is undisputed that the police did not begin pursuing Neira until after the collision. The record reflects both Plaintiff and Defendant have operated on the basis that neither Plaintiff nor the Portland police were at fault for the accident since October 2012 at the latest when Defendant completed its analysis of a possible subrogation claim against the Portland police. Thus, there is not any evidence in the record from which a reasonable jury could conclude the Portland police are partially at fault for the accident.

Accordingly, on this record the Court concludes Plaintiff is

17- AMENDED OPINION AND ORDER

entitled to summary judgment on the issue of comparative fault and has established as a matter of law that Neira was 100% at fault for the collision.

## PLAINTIFF'S MOTION (#132) TO STRIKE

Plaintiff moves to strike many of the factual materials Defendant submitted along with its opposition to Plaintiff's Motion for Summary Judgment. The evidence Plaintiff moves the Court to strike, however, did not affect the Court's resolution of the Motion for Summary Judgment.

Accordingly, on this record the Court denies Plaintiff's Motion to Strike as moot.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion (#103) for Partial Summary Judgment as follows: The Court **grants** Plaintiff's Motion as to the issue of fault and finds as a matter of law that Neira was 100% at fault for the accident and **denies** Plaintiff's Motion as to whether the injuries for which Plaintiff incurred the medical expenses were caused by the accident and whether the unpaid medical expenses were reasonable and necessary.

The Court also **DENIES as moot** Plaintiff's Motion (#132) to Strike.

IT IS SO ORDERED.

DATED this 18th day of May, 2015.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

19- AMENDED OPINION AND ORDER