IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PEGGY FORAKER**, <br><br> Plaintiff, <br><br> v. <br><br> **USAA CASUALTY INSURANCE COMPANY**, <br><br> Defendant. | Case No. 3:14-cv-87-SI <br><br> **OPINION AND ORDER** |

Stephen C. Hendricks, HENDRICKS LAW FIRM, 1425 SW 20th Avenue, Suite 201, Portland, OR 97201; Heather A. Brann, HEATHER A. BRANN, ATTORNEY AT LAW, P.O. Box 11588, Portland, OR 97211; James R. Jennings, JAMES R. JENNINGS, P.C., 1550 NW Eastman Parkway, Suite 275, Gresham, OR 97030. Of Attorneys for Plaintiff Peggy Foraker.

Robert S. McLay and Joshua N. Kastan, HAYES SCOTT BONINO ELLINGSON & MCLAY, LLP, 203 Redwood Shores Parkway, Suite 480, Redwood City, CA 94065; Matthew C. Casey, BULLIVANT HOUSER BAILEY, PC, 300 Pioneer Tower, 888 SW Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendant USAA Casualty Insurance Company.

**Michael H. Simon, District Judge.**

In this lawsuit, Plaintiff Peggy Foraker ("Foraker") asserted three claims against her automobile insurance carrier, Defendant USAA Casualty Insurance Company ("USAA Casualty", arising out of a January 2012 car accident with an uninsured driver. Under Oregon common law, Plaintiff alleged breach of express contract and breach of the implied covenant of

good faith and fair dealing. Plaintiff also alleged financial abuse of a vulnerable person, in violation of Oregon Revised Statutes §§ 124.005, *et seq*. Earlier in this action, the Court dismissed Plaintiff's claim of financial abuse.

The Court also bifurcated the issues. In Phase I, the Court addressed Plaintiff's claim of express breach of contract. Plaintiff achieved partial success in Phase I. Specifically, Plaintiff succeeded in proving the fault of the uninsured motorist and that the accident was a substantial factor in causing Plaintiff's alleged damages, both of which USAA Casualty had denied. Before the Court is Plaintiff's motion for attorney's fees relating to her success in Phase I.

## STANDARDS

"In an action where a federal district court exercises subject matter jurisdiction over a state law claim, so long as state law does not contradict a valid federal statute, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009) (citation and quotation marks omitted). Under Oregon law, if a settlement is not made within six months after an insured files a proof of loss with an insurer and the insured brings an action against the insurer under a policy of insurance and the insured's recovery exceeds the amount of any tender made by the insurer, the insured is entitled to receive an award of reasonable attorney's fees. Or. Rev. Stat. § 742.061(1). That subsection provides in relevant part:

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. . . .

*Id*.

After concluding that a prevailing party shall recover reasonable attorney's fees, a court applying Oregon law must consider the specific factors set forth in Oregon Revised Statutes § 20.075 to determine the amount of attorney's fees to be awarded. The specific factors set forth in § 20.075(1)[1] are:

>   (a)   The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>
>   (b)   The objective reasonableness of the claims and defenses asserted by the parties.
>
>   (c)   The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>
>   (d)   The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>
>   (e)   The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
>   (f)   The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
>   (g)   The amount that the court has awarded as a prevailing party fee under ORS 20.190.
>
>   (h)   Such other factors as the court may consider appropriate under the circumstances of the case.

Or. Rev. Stat. § 20.075(1). After considering these eight factors, Or. Rev. Stat. § 20.075(2) then directs the court to consider the following additional eight factors:

---

[1] Under subsection (1), these factors are to be first considered in determining whether to award fees "in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." In any case in which an award of fees is authorized or required, however, a court still must consider the factors specified in subsection (1) as well as the factors specified in subsection (2) "in determining the amount of an award of attorney fees." Or. Rev. Stat. § 20.075(2).

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
>
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
>
> (c) The fee customarily charged in the locality for similar legal services.
>
> (d) The amount involved in the controversy and the results obtained.
>
> (e) The time limitations imposed by the client or the circumstances of the case.
>
> (f) The nature and length of the attorney's professional relationship with the client.
>
> (g) The experience, reputation and ability of the attorney performing the services.
>
> (h) Whether the fee of the attorney is fixed or contingent.

Or. Rev. Stat. § 20.075(2). Oregon law further directs that when analyzing these factors, a court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies." *McCarthy v. Or. Freeze Dry, Inc.*, 327 Or. 185, 190-91 (1998). The court, however, "ordinarily has no obligation to make findings on statutory criteria that play no role in the court's decision." *Frakes v. Nay*, 254 Or. App. 236, 255 (2012).

Under Oregon Revised Statutes § 20.075(2), factor (a) generally relates to the reasonableness of the number of hours expended by counsel for the prevailing party, factors (c) and (g) generally relate to the reasonableness of the hourly rates charged, and factor (d) generally informs whether an upward or downward adjustment might be appropriate. Taken together, these factors are comparable to what is often referred to as the "lodestar" method for calculating a reasonable attorney's fee. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (holding that the lodestar method yields a presumptively reasonable fee, subject to either upward

PAGE 4 – OPINION AND ORDER

or downward adjustment as appropriate); *see also Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 221 (2013) ("The lodestar approach that the parties have used is at least a permissible one under the statutes involved," including Or. Rev. Stat. § 20.075); *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 255 Or. App. 525, 554 (2013) ("The lodestar method that the trial court used is a commonly applied and permissible approach for determining the reasonableness of a fee award . . . .").

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[2] In making this calculation, the district court should consider various factors of reasonableness, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id*. at 1203. Alternatively, "when faced with a massive fee

---

[2] It is "well established that time spent in preparing fee applications" also is compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996) (quotation marks omitted)).

application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id*. (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quotation marks omitted)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule: "'[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.'" *Id*. (alteration in original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, other courts, including the District of Oregon, specifically caution against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended. *See, e.g.*, U.S. District Court, District of Oregon, Message from the Court Regarding Attorney Fee Petitions, *available at* https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last updated Mar. 2, 2017). Applying this cautionary statement, United States Magistrate Judge John Acosta has noted, "the court may excuse this method when the billing period is no more than three hours." *Noel v. Hall*, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013). For block-billing periods more than three hours, however, Judge Acosta has reduced each applicable entry by fifty percent.

> Accordingly, the block-billed time requested over the three-hour maximum will be reduced by fifty percent. Such a reduction is warranted because the vague nature of the entry makes it impossible for the court to make *any* assessment as to the reasonableness of that time expended. *See Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011) ("The fee award may

> be reduced if [plaintiff's] renewed request is supported only by
> block-billing statements of the relevant activity, although a fee
> award cannot be denied on this basis.").

*Id.* (alteration and emphasis in original).

After determining the number of hours reasonably spent, the district court then calculates the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable number of hours. This calculation yields the lodestar amount. For this purpose, the "'prevailing market rates in the relevant community' set the reasonable hourly rates." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "'Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.'" *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.*

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition, courts in the District of Oregon have the benefit of several billing rate surveys. One useful survey is the Oregon State Bar 2017 Economic Survey ("OSB 2017 Survey"), which contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. A copy of the OSB 2017 Survey is available at http://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited on August 14, 2018).

Another somewhat useful survey, although more limited in scope, is the Morones Survey of Commercial Litigation Fees, updated as of January 1, 2016 ("Morones 2016 Survey").

PAGE 7 – OPINION AND ORDER

ECF 362-9. The Morones 2016 Survey contains data on attorney billing rates based on years of experience but is confined to commercial litigation attorneys practicing in Portland, Oregon. The Morones 2016 Survey reports data for 312 attorneys from 21 law firms (out of 28 law firms requested to provide data).

## BACKGROUND

On January 4, 2012, Plaintiff was injured in an automobile collision caused by an intoxicated, uninsured motorist. The next day, Plaintiff reported the accident to Defendant, her insurer. By February 2013, more than a year later, Defendant had paid Plaintiff $159,329.76 for covered medical expenses. On April 8, 2013, Plaintiff made a demand against Defendant for $1 million, which was the limit of Plaintiff's uninsured motorist ("UM") coverage with Defendant. On May 30, 2013, Plaintiff and Defendant agreed to an "open extension" of time for Defendant to respond to Plaintiff's demand.

On November 14, 2013, Defendant offered to pay Plaintiff $250,000 to resolve Plaintiff's UM claim. Plaintiff rejected Defendant's offer. On December 16, 2013, Plaintiff sued Defendant in Oregon state court, and Defendant removed the action to federal court, asserting diversity jurisdiction. The case was assigned to U.S. District Judge Anna Brown.

On December 1, 2014, Defendant offered $650,000, inclusive of fees and costs, to settle the case. Plaintiff rejected the offer. On December 18, 2014, Defendant served an offer of judgment of $550,000, with fees and costs to be determined by the Court. Plaintiff rejected this offer. On January 19, 2015, Plaintiff demanded the policy limits of $1 million, plus reasonable fees and costs. Defendant rejected this offer.

Defendant moved to dismiss Plaintiff's claim alleging financial abuse of a vulnerable person. U.S. District Judge Anna Brown, who initially presided over this case, dismissed this claim as premature. Judge Brown then bifurcated Plaintiff's claim alleging breach of express

contract from Plaintiff's claim alleging breach of the implied covenant of good faith and fair dealing. The parties stipulated to a bench trial, waiving their rights to a jury. Plaintiff also moved for partial summary judgment, which the Court granted in part and denied in part, determining, among other things, that the other driver was 100 percent at fault for the accident. ECF 139. The issues of causation and damages, however, still needed to be determined by the Court acting as factfinder.

The Court held an eight-day bench trial from January 25 to February 3, 2016. On February 2, 2016, the day before issuing her verdict, Judge Brown encouraged the parties to settle the case. Plaintiff demanded $2 million, inclusive of fees and costs, and Defendant offered $1.5 million. The parties did not reach a settlement.

On February 3, 2016, Judge Brown found that the other driver's negligence was a substantial, contributing factor that caused Plaintiff's injuries. Judge Brown then "awarded" Plaintiff $1,172,338.04 in economic damages and $750,000.00 in non-economic damages as a result of the uninsured motorist's conduct. ECF 237. On February 19, 2016, Defendant paid Plaintiff $1 million, which was the policy limit of her UM coverage.

The parties then cross-moved for summary judgment on Plaintiff's claim of breach of express contract. Judge Brown granted Defendant's motion and denied Plaintiff's motion. Judge Brown explained that because Defendant never actually denied Plaintiff's UM claim and because Defendant paid Plaintiff $1 million promptly after the Court rendered its decision on causation and the amount of Plaintiff's damages, Defendant did not breach any express term of its contract with Plaintiff. ECF 315. The Court also determined that because Plaintiff started litigation during the claims negotiation process, she "effectively short-circuited the claims

process before the expiration of the open-ended time extension for Defendant to state a final position on Plaintiff's policy-limits demand." *Id.* at 11.

On November 4, 2016, Judge Brown *sua sponte* recused herself from the remainder of this case. ECF 325. Judge Brown noted that because of the many discovery disputes and other litigation matters to which she had been exposed, it would be difficult for her to serve as the factfinder in Phase II and make a determination about Defendant's good faith handling of the claims process. On November 8, 2016, the lawsuit was transferred to the undersigned judicial officer. At that time, several motions were pending, which the undersigned denied without prejudice. On January 20, 2017, Plaintiff moved to reinstate her statutory claim for financial abuse of a vulnerable person.

The Court determined that non-economic damages could be available for Plaintiff's claim of breach of the implied covenant of good faith and fair dealing, if she could plead and prove physical injury as a result of Defendant's alleged breach. The Court also determined that damages for such breach are traditional expectation damages that are not subject to the $1 million bodily injury policy limit contained in the insurance policy issued by Defendant. The Court also concluded that Plaintiff could not maintain her claim for financial abuse of a vulnerable person under Oregon law, but granted Plaintiff leave to seek reconsideration if Oregon law were to change, because the Ninth Circuit recently had certified a question to the Oregon Supreme Court that could have implications for this claim.[3] Finally, the Court noted that Plaintiff could immediately file her motion for attorney's fees for her success in Phase I of this case.

---

[3] The Oregon Supreme Court subsequently held that an alleged bad faith delay in the processing of insurance claims of a vulnerable person does not state a claim under Oregon law for financial abuse of a vulnerable person. *See Bates v. Bankers Life and Cas. Co.*, 362 Or. 337 (2018).

PAGE 10 – OPINION AND ORDER

## DISCUSSION

The procedural history of this case has been somewhat complicated with bifurcations and split resolution of the issues. The case was originally bifurcated to address in Phase I Plaintiff's claim breach of express contract. The case was then bifurcated again, and the trial part of Phase I only addressed the issues of whether the uninsured motorist was a substantial factor in causing Plaintiff's injuries and the total of economic and noneconomic damages suffered by Plaintiff as a result of those injuries. The determination of 100 percent fault by the uninsured motorist had been resolved through partial summary judgment before the bench trial. Plaintiff succeeded in the Phase I bench trial and obtained a "verdict" in her favor. In that verdict, Judge Brown found that the uninsured motorist was, in fact, a substantial factor in causing Plaintiff's injuries and determined the total amount of damages suffered by Plaintiff from those injuries.

Plaintiff did not, however, prevail in Phase I at summary judgment on her breach of express contract claim. Promptly after Judge Brown concluded that the uninsured motorist caused Plaintiff's injuries and that those injuries resulted in damages that exceeded the policy limits, Defendant paid Plaintiff the full policy limits. Because Plaintiff had given Defendant an open-ended extension of time to consider Plaintiff's demand for policy limits, Judge Brown found that Defendant had not breached any express term in the insurance contract by waiting until after the Court's decision on causation and damages before paying Plaintiff the policy limits. Plaintiff, however, is nevertheless entitled to attorney's fees for her success in obtaining partial summary judgment before the bench trial and at the bench trial on the issues of the fault of the uninsured motorist, the causal connection of the accident to Plaintiff's injuries, and the total amount of damages. Defendant does not dispute that general conclusion.

Defendant, however, does dispute several of Plaintiff's specific time entries, which are discussed further below. Defendant also generally disputes the hourly rates requested by Plaintiff

PAGE 11 – OPINION AND ORDER

for her attorneys, although only specifically objects to the hourly rate requested by one attorney. The primary dispute between the parties is whether the Court should apply a fee multiplier. Plaintiff requests a fee multiplier of 2, and Defendant objects to any fee multiplier. Defendant argues that the lodestar calculation alone is sufficient fairly to compensate Plaintiff under Oregon's applicable attorney's fee statute. The Court considers all the factors under Oregon law to decide whether a fee multiplier should be applied, and then calculates Plaintiff's reasonable lodestar figure.

**A. Review of Statutory Factors**

 **1. Conduct of parties in transactions giving rise to litigation**

  The Court has not yet resolved whether Defendant acted in bad faith in the handling of Plaintiff's claim. The Court recognizes, however, that the purpose of Oregon's statute "allowing recovery of attorney fees by claimants under insurance policies is to encourage the settlement of such claims without litigation and to reimburse successful plaintiffs reasonably for moneys expended for attorney fees in suits to enforce insurance contracts." *Chalmers v. Oregon Auto. Ins. Co.*, 263 Or. 449, 452 (1972). The statute "was intended to protect an insured who has suffered a loss from annoying and expensive litigation. In other words, the statute seeks to protect *insureds* from the necessity of litigating their valid claims. It has no converse purpose of protecting *insurers* from litigation." *Dockins v. State Farm Ins. Co.*, 329 Or. 20, 29 (1999) (quotation marks and citation omitted) (emphasis in original). This factor supports a modest fee multiplier.

 **2. Reasonableness of claims and defenses asserted in litigation**

  Although some positions taken by Defendant were not reasonable (*e.g.*, the lack of fault of the uninsured motorist), some positions were reasonable. Similarly, Plaintiff raised some

reasonable claims and arguments and some unsupported under Oregon law. Overall, this factor does not support a fee multiplier.

### 3. Deterrence – good faith and meritless claims and defenses

Until Plaintiff's bad faith claim is resolved, these two factors cannot fully be evaluated. At this stage, because both sides raised some arguments with merit and some arguments without merit, this factor is neutral.

### 4. Objective reasonableness of parties and diligence of parties and attorneys

As Judge Brown noted, this case was heavily litigated (and possibly over-litigated). Although Plaintiff had some role in this, it was mainly Defendant's conduct during the proceedings that resulted in the possible over-litigation. Further, there were discovery problems created by Defendant, including representations to Plaintiff and the Court that the claim file had been produced in full only to be later supplemented, and a misrepresentation relating to the lack of electronic imaging when, in fact, Defendant had electronic imaging. These concerns led Judge Brown to leave open a motion for sanctions during trial, denying the sanction of precluding testimony but leaving open for later resolution other, lesser sanctions. ECF 346 at 11:3-8. Judge Brown also noted that she was "troubled" by Defendant's conduct and that in the event Plaintiff prevailed at trial and moved for attorney's fees, Judge Brown was "certain" that the extent Plaintiff had to litigate and potentially over-litigate this case would be argued "as the result of the manner in which the defendant has treated the plaintiff from the beginning and then litigated this case through its agents, including counsel." *Id.* at 15-18.

Later, in resolving Plaintiff's motion for sanctions, Judge Brown found that Defendant's counsel "abdicated their responsibility as lawyers in the case for the proper management of [certain] records." ECF 271 at 64:12-13. Judge Brown also warned Defendant's *pro hac vice* counsel that admission in this district is privilege and not a right and that this privilege can be

PAGE 13 – OPINION AND ORDER

lost if there is a basis to conclude that counsel "will not perform consistently with the requirements of professionalism mandated in this district." *Id.* at 67:15-16. Judge Brown requested Plaintiff's counsel to inform the Court if the need should arise to revoke the *pro hac vice* status of any of Defendant's counsel. Judge Brown, however, also noted that Plaintiff's counsel at times had engaged in mistrustful behavior and contributed to certain problems in managing this litigation. Accordingly, this factor supports only a modest fee multiplier.

### 5. Objective reasonableness of parties and diligence pursuing settlement

Both parties pursued settlement, including when Judge Brown encouraged settlement near the end of trial. Although Defendant originally did not make significant settlement offers, the settlement offer of $1.5 million, inclusive of fees and costs, at the close of trial was not insubstantial. Nonetheless, given all the facts of this case and the history of all the settlement negotiations, this factor supports a modest fee multiplier.

### 6. Time and labor required, novelty and difficulty, skill required

Phase I involved an eight-day bench trial and post-trial motions. Plaintiff also filed a motion for summary judgment before trial, on which she succeeded in having the issue of fault resolved in her favor. There were also numerous discovery disputes. Thus, significant time and labor was required. The issues, however, were not particularly novel or difficult. Further, a significantly high level of skill and expertise was not required for this case. Moreover, this factor is subsumed into the lodestar calculation. This factor thus does not support a fee multiplier.

### 7. Likelihood that acceptance would preclude taking other cases

The Court accepts the statements by Plaintiff's counsel that it was apparent that taking this case would preclude counsel from taking other cases. Previous counsel had withdrawn, and it was apparent that Defendant was going to heavily litigate this case. This factor supports a modest fee multiplier.

8. **Amount involved and results obtained**

The amount involved was at least $1 million, the UM policy limits, and the results obtained for Plaintiff were good. Plaintiff proved that the uninsured motorist was at fault, and that the accident was a substantial factor in causing Plaintiff's substantial damages in the approximate amount of $1.9 million. Plaintiff did not prove breach of contract, but what she did prove was sufficient to require Defendant to pay its $1 million policy limit and entitle Plaintiff to an award of attorney's fees. A lodestar fee award, however, is sufficient to compensate this result. Thus, this factor does not support a fee multiplier.

9. **Time limitations imposed by Plaintiff or other relevant circumstances**

Plaintiff argues that Attorney Brann had a very short time to evaluate whether to take the case when previous counsel withdrew, as did Attorney Hendricks when Attorney Jennings had to reduce his role because of health issues. The trial, however, was not held until much later. Thus, this factor does not support a fee multiplier.

10. **Nature and length of attorney's relationship with client**

There is nothing particularly unusual about the nature or relationship between Plaintiff and her attorneys that supports a fee multiplier.

11. **Experience, reputation, and ability of Plaintiff's attorneys**

Plaintiff has skilled attorneys with good reputations. These abilities, however, already are compensated in the higher hourly rates approved by the Court (*see* Section B below). Thus, this factor does not support a fee multiplier.

**12. Whether fee is fixed or contingent**

Under Oregon law, this factor is important in considering fee multipliers.[4] *See, e.g.*, *Moro v. State*, 360 Or. 467, 491 (2016) ("The grounds for a fee multiplier have been stated differently in different cases. In *Strawn*, this court noted that a fee multiplier may be justified to account for the risk of nonpayment in a contingency fee case."); *id.* at 492 ("In this case, we place greater weight on the risk of nonpayment, because the additional factors discussed in *Strunk III* were already considered when determining reasonable hourly rates for claimants' work. . . . Nevertheless, a fee multiplier may be justified when the attorney's payment is based on a contingency-fee arrangement or there is otherwise a delay in getting paid."). In *Moro*, the attorneys were given a higher hourly rate based on exceptional success, difficulty and complexity, value and interests at stake, and the skill and professional standing of counsel. In considering the fee multiplier, the Oregon Supreme Court noted that those factors had already been considered in evaluating the hourly rate and instead focused on the risk of nonpayment. *Id.* at 492. The court awarded a 1.5 multiplier in *Moro* to the attorneys who worked on a quasi-contingency and awarded no multiplier to the attorneys who did not work on a contingency or quasi-contingency arrangement. *Id.* at 492-93. Because the other grounds justifying a multiplier had already been considering in awarding the higher hourly rate, those attorneys received no fee multiplier. *Id.* at 493. Thus, the Oregon Supreme Court has based a fee multiplier on contingency-fee status alone.

In the pending case, Plaintiff's counsel faced significant litigation, possibly over-litigation, without any guarantee of payment. At the minimum, Plaintiff's counsel faced

---

[4] The Court recognizes that in its opinion in *Vail v. Country Mut. Ins. Co.*, the Court erroneously cited the standard for *federal* law that whether a case is fixed or contingent is no longer a valid factor. 2016 WL 684039, at *4 n.3 (D. Or. Feb. 19, 2016). Under *Oregon* law, however, this still is a valid factor.

significant delay in receiving payment. Moreover, Plaintiff's counsel had to advance significant upfront litigation costs and expenses. Thus, this factor supports a fee multiplier.

**13. Summary**

Considering all relevant factors, the Court finds that a fee multiplier of 1.5 is appropriate. Plaintiff's counsel faced a risk of nonpayment, or at least a substantial delay in receiving payment, and advanced significant upfront litigation costs and expenses. Evaluating the overall conduct of the parties and counsel, Defendant's conduct and that of its counsel supports a multiplier in the amount 1.5. The Court, however, does not find that the conduct of Defendant and its agents rises to the level of supporting a multiplier of 2 or that the risk of nonpayment or other factors support such a multiple. Moreover, as discussed below, the experience and skill of the attorneys, the labor required, and the results obtained are already considered in the calculation of the lodestar.

**B. Review of Hourly Rates**

Defendant makes general comments regarding the requested hourly rates for Stephen C. Hendricks and Heather A. Brann, but specifically objects to the requested hourly rate for James R. Jennings. Mr. Hendricks requests reimbursement at the rate of $500 per hour. Mr. Hendricks has more than 30 years' experience. In the OSB 2017 Survey, the 75th percentile of attorneys in Portland with this level of experience charge $495 per hour and the 95th percentile charge $610 per hour. This is without regard to specialization. Further, the Morones 2016 Survey shows attorneys at this level of experience charge an average hourly rate of $525, with a median rate of $517. Considering Mr. Hendricks abilities, skill, and experience, and the results obtained, the Court finds Mr. Hendricks' requested hourly rate to be reasonable.

Ms. Brann requests $350 per hour. In 2014, during the relevant time period, Ms. Brann had 14 years of experience practicing as an attorney. Ms. Brann began her career with a federal

PAGE 17 – OPINION AND ORDER

judicial clerkship and states in her declaration that because of her specialized experience, she can charge higher rates than many of her peers. She further states that she regularly charges an hourly-rate of $350. In the OSB 2017 Survey, the hourly rate for the 75th percentile of Portland attorneys with 13-15 years' experience is $375, without regard to specialization. In the Morones Survey, attorneys with 10-19 years' experience have an average hourly billing rate of $371, with a median hourly billing rate of $355. Considering Ms. Brann's abilities, skill, and experience, and the results obtained, the Court finds Ms. Brann's requested hourly rate to be reasonable.

Plaintiff requests $450 per hour for Mr. Jennings. Plaintiff offers little explanation for the requested hourly rate. Plaintiff does not even indicate how many years Mr. Jennings had been practicing during the relevant time. Further, Plaintiff provides no response to Defendant's objection to the requested $450 hourly rate and Defendant's suggested alternate rate of $350. For these reasons, Defendant's objection is sustained and the Court finds $350 to be a reasonable hourly rate for the time spent by Mr. Jennings. This results in a reduction of Plaintiff's requested fees in the amount of $10,780.

**C. Review of Hours Expended**

Defendant objects to certain specific hours billed by Plaintiff's attorneys.[5] Defendant objects to Plaintiff's hours that relate to correcting "block billing" entries as unrecoverable administrative tasks. Plaintiff responds that time spent on preparing fee petitions is recoverable. Although that is generally correct, the Court agrees that correcting improper block billing entries is clerical in nature and not properly billed attorney time. Thus, the Court reduces Plaintiff's requested fees by $7,850.

---

[5] Plaintiff asserts that Defendant failed to provide the Court with the specific entries challenged, as the Court had requested. The exhibits to the Supplemental Declaration of James M. Callahan, however, provide the line-item billing entries challenged by Defendant.

Defendant also specifically objects to other entries as improper clerical and administrative time. The Court has reviewed those entries and finds that other than Mr. Hendricks' entries relating to travel arrangements, they are not improper. Those travel arrangement entries total 1.1 hours, requiring a reduction of $550.

Defendant also specifically objects to time billed relating to Plaintiff's vulnerable person claim, Phase II damages or other issues, and the post-verdict summary judgment motion. Plaintiff responds that none of this time should be reduced because Plaintiff did not submit any time for her original attorneys or for paralegal time. That Plaintiff chose to omit time that might have otherwise been compensable, however, is not a reason to compensate Plaintiff for non-compensable time.

Plaintiff did not succeed on her vulnerable person claim and thus is not entitled to attorney's fees for that claim. Additionally, Phase II attorney's fees may be considered and compensated if Plaintiff is successful in Phase II and establishes that she is entitled to attorney's fees for that phase. Those fees, however, are not currently recoverable in this fee petition. Plaintiff also argues with respect to the post-verdict summary judgment motion that Judge Brown refused to entertain Plaintiff's breach of contract question in the "verdict form" used at trial and thus additional motion practice was required. Plaintiff further argues that the time spent on these matters, including other post-verdict briefing, should be compensable because Plaintiff was successful in receiving the full policy benefits in Phase I. Plaintiff argues that the Court should not so finely parse Plaintiff's level of success in awarding Phase I fees. The Court disagrees. Plaintiff lost the second summary judgment motion. Thus, the Court will not award Plaintiff fees relating to that motion. This category of objections is sustained, and the Court reduces Plaintiff's request by $26,985.

Defendant also objects to Plaintiff recovering for time spent litigating the pre-trial Phase I summary judgment motion. Plaintiff, however, partially succeeded on that motion. Thus, the Court overrules Defendant's objection relating to that motion. Defendant also objects to Plaintiff recovering for time spent relating to disbursing the insurance proceeds. The Court overrules this objection. This is reasonably foreseeable attorney time and sufficiently related to Plaintiff's success in obtaining the policy proceeds. Finally, Defendant objects to Plaintiff recovering for the time spent in a post-trial mediation, when the parties tried to resolve their remaining issues. The Court agrees that this is not recoverable as part of Plaintiff's successful litigation under Phase I, although it may be recoverable in Phase II. Accordingly, Plaintiff's request at Phase I is reduced by $7,065.

**D. Summary**

Plaintiff requests a lodestar amount of $926,950. Considering all of the reductions allowed by the Court, both from the hourly rate requested for Mr. Jennings and in the unrecoverable hours spent, the total reduction allowed by the Court is $53,230. Accordingly, Plaintiff is awarded a lodestar amount of $873,720. After applying a 1.5 multiplier, Plaintiff's total fee award at Phase I is $1,310,580.

**CONCLUSION**

Plaintiff's motion for attorney's fees for Phase I (ECF 358) is GRANTED IN PART. Plaintiff is awarded $1,310,580 in attorney's fees.

**IT IS SO ORDERED**.

DATED this 15th day of August, 2018.

                                                    */s/ Michael H. Simon*
                                                   Michael H. Simon
                                                   United States District Judge