**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PEGGY FORAKER**,

Plaintiff,

v.

**USAA CASUALTY INSURANCE COMPANY**,

Defendant.

Case No. 3:14-cv-87-SI

**ORDER ON PHASE II ATTORNEY FEES**

Stephen C. Hendricks, HENDRICKS LAW FIRM, 1425 SW 20th Avenue, Suite 201, Portland, OR 97201; Heather A. Brann, HEATHER A. BRANN, ATTORNEY AT LAW, P.O. Box 11588, Portland, OR 97211; James R. Jennings, JAMES R. JENNINGS, P.C., 1550 NW Eastman Parkway, Suite 275, Gresham, OR 97030. Of Attorneys for Plaintiff Peggy Foraker.

Robert S. McLay and Joshua N. Kastan, HAYES SCOTT BONINO ELLINGSON & MCLAY, LLP, 203 Redwood Shores Parkway, Suite 480, Redwood City, CA 94065; Matthew C. Casey, BULLIVANT HOUSER BAILEY, PC, 300 Pioneer Tower, 888 SW Fifth Avenue, Portland, OR 97204. Of Attorneys for Defendant USAA Casualty Insurance Company.

**Michael H. Simon, District Judge.**

After a two-day bench trial at Phase II in this case, the Court entered its Opinion and Order in favor of Plaintiff Peggy Foraker ("Foraker"). ECF 506. The Court found Defendant USAA Casualty Insurance Company ("USAA") to be in breach of its implied covenant of good faith and fair dealing with Foraker, USAA's insured. The Court awarded Foraker Phase II

damages in the amount of $322,882.78. *Id*. Defendant promptly paid Foraker that amount plus post-judgment interest. ECF 520. After prevailing, Plaintiff filed a petition for Phase II attorney fees. ECF 509. For the reasons stated below, the Court awards Foraker $178,792.93 in Phase II attorney fees, representing 25 percent of her Phase II lodestar figure of $715,171.70.

## STANDARDS

"In an action where a federal district court exercises subject matter jurisdiction over a state law claim, so long as state law does not contradict a valid federal statute, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009) (citation and quotation marks omitted). Under Oregon law, if a settlement is not made within six months after an insured files a proof of loss with an insurer and the insured brings an action against the insurer under a policy of insurance and the insured's recovery exceeds the amount of any tender made by the insurer, the insured is entitled to receive an award of reasonable attorney's fees. Or. Rev. Stat. § 742.061(1). That subsection provides in relevant part:

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. . . .

*Id*.

After concluding that a prevailing party shall recover reasonable attorney's fees, a court applying Oregon law must consider the specific factors set forth in Oregon Revised Statutes

§ 20.075 to determine the amount of attorney's fees to be awarded. The specific factors set forth in § 20.075(1)[1] are:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
>
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
> (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
>
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

Or. Rev. Stat. § 20.075(1). After considering these eight factors, Or. Rev. Stat. § 20.075(2) directs the court to consider the following additional eight factors:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

[1] Under subsection (1), these factors are to be first considered in determining whether to award fees "in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." In any case in which an award of fees is authorized or required, however, a court still must consider the factors specified in subsection (1) as well as the factors specified in subsection (2) "in determining the amount of an award of attorney fees." Or. Rev. Stat. § 20.075(2).

> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
>
> (c) The fee customarily charged in the locality for similar legal services.
>
> (d) The amount involved in the controversy and the results obtained.
>
> (e) The time limitations imposed by the client or the circumstances of the case.
>
> (f) The nature and length of the attorney's professional relationship with the client.
>
> (g) The experience, reputation and ability of the attorney performing the services.
>
> (h) Whether the fee of the attorney is fixed or contingent.

Or. Rev. Stat. § 20.075(2). Oregon law further directs that when analyzing these factors, a court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies." *McCarthy v. Or. Freeze Dry, Inc.*, 327 Or. 185, 190-91 (1998). The court, however, "ordinarily has no obligation to make findings on statutory criteria that play no role in the court's decision." *Frakes v. Nay*, 254 Or. App. 236, 255 (2012).

Under Oregon Revised Statutes § 20.075(2), factor (a) generally relates to the reasonableness of the number of hours expended by counsel for the prevailing party, factors (c) and (g) generally relate to the reasonableness of the hourly rates charged, and factor (d) generally informs whether an upward or downward adjustment might be appropriate. Taken together, these factors are comparable to what is often referred to as the "lodestar" method for calculating a reasonable attorney's fee. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (holding that the lodestar method yields a presumptively reasonable fee, subject to either upward or downward adjustment as appropriate); *see also Strawn v. Farmers Ins. Co. of Or.*, 353

Or. 210, 221 (2013) ("The lodestar approach that the parties have used is at least a permissible one under the statutes involved," including Or. Rev. Stat. § 20.075); *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 255 Or. App. 525, 554 (2013) ("The lodestar method that the trial court used is a commonly applied and permissible approach for determining the reasonableness of a fee award . . . .").

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[2] In making this calculation, the district court should consider various factors of reasonableness, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id.* at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in

---

[2] The time spent in preparing fee applications also is compensable. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996) (quotation marks omitted)).

the number of hours claimed or in the final lodestar figure." *Id*. (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quotation marks omitted)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule: "'[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.'" *Id*. (alteration in original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, other courts, including the District of Oregon, specifically caution against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended. *See, e.g.*, U.S. District Court, District of Oregon, Message from the Court Regarding Attorney Fee Petitions, *available at* https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last updated Mar. 2, 2017). Applying this cautionary statement, United States Magistrate Judge John Acosta has noted, "the court may excuse this method when the billing period is no more than three hours." *Noel v. Hall*, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013). For block-billing periods more than three hours, however, Judge Acosta has reduced each applicable entry by fifty percent.

> Accordingly, the block-billed time requested over the three-hour maximum will be reduced by fifty percent. Such a reduction is warranted because the vague nature of the entry makes it impossible for the court to make *any* assessment as to the reasonableness of that time expended. *See Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011) ("The fee award may be reduced if [plaintiff's] renewed request is supported only by

> block-billing statements of the relevant activity, although a fee award cannot be denied on this basis.").

*Id.* (alteration and emphasis in original).

After determining the number of hours reasonably spent, the district court then calculates the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable number of hours. This calculation yields the lodestar amount. For this purpose, the "'prevailing market rates in the relevant community' set the reasonable hourly rates." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "'Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.'" *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.*

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition, courts in the District of Oregon have the benefit of several billing rate surveys. One useful survey is the Oregon State Bar 2017 Economic Survey ("OSB 2017 Survey"), which contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. A copy of the OSB 2017 Survey is available at https://www.osbar.org/surveys_research/snrtoc.html (last visited on June 11, 2020).

Another useful survey is the Morones Survey of Commercial Litigation Fees, updated as of January 1, 2018 ("Morones 2018 Survey"). The Morones 2018 Survey contains data on attorney billing rates based on years of experience but is confined to commercial litigation

attorneys practicing in Portland, Oregon. The Morones 2018 Survey reports data for 305 attorneys from 19 law firms (out of 28 law firms requested to provide data).

**BACKGROUND**

On January 4, 2012, Plaintiff was injured in an automobile collision caused by an intoxicated, uninsured motorist. The next day, Plaintiff reported the accident to Defendant, her insurer. By February 2013, more than a year later, Defendant had paid Plaintiff only for her covered medical expenses, $159,329.76. On April 8, 2013, Plaintiff made a demand against Defendant for $1 million, the policy limit of Plaintiff's uninsured motorist ("UM") coverage with Defendant. On November 14, 2013, Defendant offered to pay Plaintiff $250,000 to resolve Plaintiff's UM claim. Plaintiff rejected Defendant's offer, and this lawsuit followed.

After an eight-day bench trial at Phase I, United States District Judge Anna Brown found that the other driver's negligence was a substantial, contributing factor that caused Plaintiff's injuries. Judge Brown also determined that Plaintiff had suffered $1,172,338.04 in economic damages and $750,000 in non-economic damages, all caused by the uninsured motorist's conduct. ECF 237. Defendant then promptly paid Plaintiff $1 million, the policy limit of her UM coverage. Judge Brown later transferred the case to the undersigned, who awarded Plaintiff Phase I attorney fees in the amount of $1,310,580, which included a 1.5 multiplier. ECF 391.

The case next proceeded to Phase II. After a two-day bench trial, the Court found that Defendant had breached its implied covenant of good faith and fair dealing, which was the only claim that remained at issue by the time of trial. ECF 506. At the Phase II trial, Defendant vigorously contested the question of liability. After finding liability, the Court awarded Plaintiff additional damages at Phase II in the amount of $322,882.78. *Id*.

Plaintiff's Phase II damage award was the sum of two components. It was also significantly less than Plaintiff had requested. *Id*. The first component was prejudgment interest

in the amount of $195,750, based on nine percent simple interest on $1 million from December 16, 2013 (the date Plaintiff filed this lawsuit) through February 19, 2016 (the date Defendant paid Plaintiff $1 million). The second component was $127,132.78 as foreseeable consequential damages for Phase I litigation costs that were not previously awarded to Plaintiff. *Id*.

At the Phase II trial, Plaintiff argued that she was entitled to damages for loss of use of $1 million caused by Defendant's delayed payment. Plaintiff offered several alternative valuations of her loss of use of that money, with $553,317 being at the high end of Plaintiff's valuations. ECF 501 at 38. The Court rejected Plaintiff's methodologies and awarded Plaintiff $195,750, representing prejudgment interest at 9 percent per year. ECF 506. As the Court explained, this amount would sufficiently compensate Plaintiff for her loss of use of $1 million. *Id*.

Plaintiff also argued at trial that she was entitled to $127,132.78 in Phase I litigation costs as foreseeable consequential damages not previously awarded. Defendant did not challenge that amount, only Plaintiff's right to recover it on the grounds that Defendant did not breach its implied covenant. After finding in favor of Plaintiff on the issue of liability, the Court awarded Plaintiff this amount in full. ECF 506.

Finally, Plaintiff argued at trial that she was entitled to reasonable non-economic damages in an unspecified amount. Plaintiff asserted that the delay in her receiving UM coverage payment from Defendant caused Plaintiff to forego receiving certain medical care that Plaintiff contended she would have otherwise received and that the delay caused additional physical injury to Plaintiff. The Court rejected this claim and awarded Plaintiff no non-economic damages. *Id* at 18-19.

Plaintiff now seeks Phase II attorney fees and costs in the total amount of $1,539,812.26. Plaintiff arrives at this figure as follows: (1) an initial Phase II attorney fee award of $1,299,020, which consists of a lodestar amount of $649,510 times a multiplier of 2.0 (ECF 509 at 2); (2) an additional $131,323.40 for time incurred in preparing Plaintiff's Phase II fee petition, which consists of a lodestar amount of $65,661.70 times a multiplier of 2.0 (ECF 530 at 3); and (3) Phase II litigation expenses in the amount of $109,468.86, which Plaintiff asserts represents additional consequential damages (ECF 509 at 2). Excluding any multiplier and the additional "consequential damages," Plaintiff's lodestar figure is $715,171.70.

## DISCUSSION

### A. Review of Statutory Factors

#### 1. Conduct of parties in transactions giving rise to litigation

This factor is neutral. Further, this factor was already adequately addressed at Phase I, when the Court included a 1.5 multiplier for Plaintiff's Phase I attorney fees. *See* ECF 391.

#### 2. Reasonableness of claims and defenses asserted in litigation

This factor is neutral. At Phase II, each side asserted some arguments that were unreasonable and rejected by the Court and some arguments that were reasonable and accepted. *See* ECF 506.

#### 3. Deterrence – good faith and meritless claims and defenses

This factor is neutral. Further, this factor was already adequately addressed at Phase I, when the Court included a 1.5 multiplier for Plaintiff's Phase I attorney fees. *See* ECF 391.

#### 4. Objective reasonableness of parties and diligence of parties and attorneys

This factor is neutral. Further, this factor was already adequately addressed at Phase I, when the Court included a 1.5 multiplier for Plaintiff's Phase I attorney fees. *See* ECF 391.

**5. Objective reasonableness of parties and diligence pursuing settlement**

This factor is neutral. Further, this factor was already adequately addressed at Phase I, when the Court included a 1.5 multiplier for Plaintiff's Phase I attorney fees. *See* ECF 391.

**6. Time and labor required, novelty and difficulty, skill required**

The work at Phase II was not particularly novel or difficult.

**7. Likelihood that acceptance would preclude taking other cases**

This factor is neutral. Further, this factor was already adequately addressed at Phase I, when the Court included a 1.5 multiplier for Plaintiff's Phase I attorney fees. *See* ECF 391.

**8. Amount involved and results obtained**

At the Phase II trial, Plaintiff sought economic damages in the amount of $680,450 plus non-economic damages in amount to be determined. The Court awarded Plaintiff $322,882.78 in economic damages and no non-economic damages.

**9. Time limitations imposed by Plaintiff or other relevant circumstances**

This factor is neutral. Further, this factor was already adequately addressed at Phase I, when the Court included a 1.5 multiplier for Plaintiff's Phase I attorney fees. *See* ECF 391.

**10. Nature and length of attorney's relationship with client**

There is nothing particularly unusual about the nature or relationship between Plaintiff and her attorneys in this case.

**11. Experience, reputation, and ability of Plaintiff's attorneys**

Plaintiff has skilled attorneys with good reputations. These abilities, however, already are reflected in the hourly rates that the Court finds reasonable.

**12. Whether fee is fixed or contingent**

This factor is neutral. Further, this factor was already adequately addressed at Phase I, when the Court included a 1.5 multiplier for Plaintiff's Phase I attorney fees. *See* ECF 391.

**B. Hourly Rates and Hours Expended**

Plaintiff is seeking an hourly rate of $559 for Mr. Hendricks and $411 for Ms. Brann. Plaintiff also is seeking an hourly rate of $175 for paralegal assistance. The Court finds these rates to be reasonable. *See generally* ECF 391.

Plaintiff also is seeking a multiplier of 2.0. The Court previously awarded a multiplier of 1.5 at Phase I, based largely on Defendant's prefiling and litigation conduct at Phase I. *See* ECF 391. That conduct did not continue at Phase II, and the Court finds no need to add a multiplier now.

The primary concern of the Court is the extensive hours requested by Plaintiff as part of her Phase II lodestar and Plaintiff's massive but poorly organized documentation. In support of her fee petition at Phase II, Plaintiff submitted 390 pages of briefing and exhibits. *See* ECF Nos. 509, 510, 511, 512, 513, 514, 530, 531, 532, and 533. The Court has reviewed Plaintiff's memoranda and supporting exhibits. The Court also is mindful that a district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Gonzalez*, 729 F.3d at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id*. The Court considers the pending fee application to be "massive" and, accordingly, will make an across-the-board percentage cut to the final lodestar figure, rather than engage in an hour-by-hour analysis.

Much of the legal and factual work spent by Plaintiff at Phase II related to Plaintiff's claim for non-economic damages, Plaintiff's claim for economic damages based on the lost gains that she would have earned in her investment portfolio, and other legal issues on which Plaintiff did not prevail.

The Court rejected Plaintiff's claim for non-economic damages as unreasonably speculative. *See* ECF 506. The Court also rejected Plaintiff's damage claim for lost gains based on her sale of certain stocks earlier than when she would have otherwise preferred to have sold them because Defendant failed timely to pay its UM policy limit. *Id.* The Court also rejected many of Plaintiff's other legal arguments, as already reflected in the case docket. Based on Plaintiff's pretrial filings and the time spent at trial, it appears to the Court that approximately 75 percent of Plaintiff's efforts were directed toward Plaintiff's unsuccessful claims and arguments. This is also consistent with the results obtained. Thus, the Court will award Plaintiff an attorney fee award at Phase II equal to 25 percent of Plaintiff's Phase II lodestar figure. The net amount is $178,792.93, and that is the amount that will be awarded to Plaintiff for Phase II attorney fees.

**C. Phase II Cost Bill**

In a federal court case based on diversity, Rule 54(d)(1) controls the assessment of costs. *Gobbo Farms & Orchards v. Poole Chemical Co., Inc.*, 81 F.3d 122, 123 (10th Cir. 1996) ("In a diversity case, federal law controls in regard to the assessment of costs." (citation and quotation marks omitted)). Although Plaintiff requests costs awarded as "consequential damages," Plaintiff offers no legal authority for the Court to do so. In fact, 28 U.S.C. § 1920 strictly limits the types of expenditures that are recoverable as "costs" in federal court. For example, expert witness fees generally are not recoverable as costs in a federal action, even in a diversity case. *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167-68 (9th Cir. 1995). Thus, Plaintiff's request for $26,021.50 for the expert witness fees of Plaintiff's insurance expert Jim Schratz is unavailable, even though the Court found his testimony to be quite helpful on issues of liability. *See generally Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("We hold that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.").

In addition, Plaintiff's submission of ECF 511-8 does not suffice as a verified cost bill. Based on Plaintiff's failure to provide a verified cost bill consistent with 28 U.S.C. §§ 1821 and 1920, the Court disallows Plaintiff's request for costs. *See also* Fed. R. Civ. P. 54(d); LR 54-1.

**CONCLUSION**

Plaintiff's Petition for Phase II Attorney Fees (ECF 509) is GRANTED IN PART. Plaintiff is awarded $178,792.93 in Phase II Attorney Fees. In addition to Plaintiff recovering $1 million from Defendant based on Defendant's policy limit for UM coverage, the Court previously awarded Plaintiff Phase I attorney fees in the amount of $1,310,580 (which included a multiplier of 1.5) and Phase II damages in the amount of $322,882.78. The Court now awards Plaintiff Phase II attorney fees in the additional amount of $178,792.93. This brings Plaintiff's total recovery in this case to $2,812,255.71, consisting of $1 million for UM policy limits plus $1,812,255.71 for attorney fees and additional damages. It is time for the parties to move on from this lawsuit.

**IT IS SO ORDERED**.

DATED this 12th day of June, 2020.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge